# EXHIBIT "E"

## Robert Blanck (Blanck & Cooper, P.A.)

**From:**        Brian Mathis <bmathis@mathislawgroup.com>
**Sent:**         Tuesday, July 17, 2018 12:12 PM
**To:**            Robert Blanck (Blanck & Cooper, P.A.)
**Cc:**            Laura Densford
**Subject:**     SFITA - PET facility operations
**Attachments:**  Services Agreement.pdf

Robert,

Good afternoon. It was a pleasure meeting with you last week on behalf of the South Florida Independent Trucker's Association ("SFITA"). Thank you again for yours and your client's time and attention.

SFITA's objective remains a cooperative resolution of the issues discussed at our meeting, and to that end, you and your client received the assurances of the motor carriers present at the meeting that each would relay the efforts made between the parties last week. I want to again reinforce our good faith approach to finding solutions and avoiding an August 1st boycott of the PET facility.

As agreed, we began last week to present the proposed stipulations reached at our meeting to involved motor carriers and their drivers. Candidly, we have not received the support and commitment from those parties that we had hoped for certain reasons. Specifically, concern by those parties that the commitments from PET are tentative, discretionary, and conditional in nature, intended to be short-term only through 8/1, and therefore, less than the meaningful, long-term commitments sought by the intermodal motor carrier community.

Given the above, we propose PET enter a written service agreement containing specific, definite terms regarding its operations. I have attached a draft form that we believe builds upon the July 11th meeting and captures the objectives of the motor carriers and their drivers, providing firm commitments from PET and offering the drivers a clear sign that PET is steadfast in resolving these issues.

We are facing a short deadline of August 1st. Based on our internal discussions, I do not believe that less than a written service agreement will avoid the scheduled boycott of PET. My strong recommendation, therefore, is that the parties make completion of the proposed attachment a priority.

Again, SFITA appreciates the attention provided to these matters by you and your client, and I look forward to continuing our joint effort towards a resolution. Please feel free to contact me at your earliest to discuss these matters in more detail.

Best regards,



**Brian K. Mathis, Esq.**
Managing Member | **Mathis Law Group**

P: 954.616.4404  M: 863.521.3191  F: 954.616.4405
E: bmathis@mathislawgroup.com  W: www.mathislawgroup.com
Physical Address: 515 E Las Olas Boulevard, Fort Lauderdale, FL 33301
Mailing Address: P.O. Box 5948, Lakeland, FL 33807

CONFIDENTIALITY AND ATTORNEY-CLIENT PRIVILEGE NOTICE: This e-mail, including any attachments, has been sent for the sole use of the intended recipient(s). It may contain information that is attorney-client privileged, confidential and/or proprietary. The privileged, confidential and/or proprietary status of the information is not waived by having been sent by e-mail transmission. If you are not the intended recipient, you are not authorized to review, disclose, copy, distribute or use any of the information contained in this transmission. If you have received this e-mail in error, please notify the sender by reply e-mail and purge all copies of this message. Thank you.

## SERVICES AGREEMENT

In exchange for the performance of drayage and interrelated operations at the Port Everglades Terminal, LLC ("PET") facility by the members of the South Florida Independent Trucker's Association, Inc. ("SFITA"), and other intermodal motor carriers and their drivers beginning August 1, 2018, PET hereby agrees to the following terms with respect to its services and operations at the PET facility as of the date of execution of this Services Agreement:

1. Hours of operation for the PET facility will be from 7:00am until 6:00pm, Eastern time, inclusive of lunch periods, with staffing of PET personnel adequate to meet operational demands;
2. Turn time for trucks will not exceed one hour and 45 minutes (1:45) from the time the truck enters the Port Everglades security gate. PET agrees to compensate motor carriers at the rate of $1.00 per minute for any turn time exceeding 1:45, and will provide motor carriers the billing information required to promptly receive payment of such delay charges.
3. Double turns or moves will be permitted during normal hours of operation; provided, however, that trucks must be in the line at the PET facility gate at or before 4:30pm Eastern time for non-refrigerated containers to receive a double turn or move.
4. Charges or fees for terminal scale operations will no longer be assessed or charged to motor carriers or their drivers.  PET agrees that the scales are used solely for the verified container weight requirements for shippers under the SOLAS Convention, as amended, and that such requirements do not apply to or contemplate intermodal motor carriers.
5. Accurate contact information for PET supervisors and personnel will be provided to intermodal motor carriers.

PET agrees that the above service and operational requirements will remain in place for a period of twelve (12) months following the execution of this Services Agreement, with PET, SFITA, and other affected and interested motor carriers to reconvene no later than ten (10) months from the date of execution to review the foregoing and address any additional service and operational matters.

This Services Agreement may be amended, or any provision hereof may be waived, only upon the approval, in writing, executed by PET and SFITA, as representative of its members.  No course of dealing between PET and any intermodal motor carrier shall be deemed effective to modify, amend or discharge any part of this Services Agreement or any rights or obligations of PET or any intended beneficiary.

Each provision of this Services Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof or the application of any such provision shall be held to be prohibited by, illegal or unenforceable under applicable law or rule in any respect by a court of competent jurisdiction, such provision shall be ineffective only to the extent of such prohibition, illegality or unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Services Agreement.

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Port Everglades Terminal, LLC,
a Florida limited liability company


_____

Richard Rovirosa, Manager

Date:_____